**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER E. FARLEY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 6981 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Four years ago, Jennifer Farley filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). 42 U.S.C. §§416(i), 423. (Administrative Record (R.) 178-179). She claimed that she became disabled as of April 1, 2010, and was unable to work due to degenerative disc disease, osteoarthritis, bulging/herniated disc, spondylitis, bone spurs, facet syndrome, myofascial pain syndrome, migraines, depression/anxiety/PTSD. (R. 226). Over the course of the ensuing three years, Ms. Farley's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Ms. Farley filed suit under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c). Ms. Farley asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.**

Ms. Farley was nearly 40 years old at the time of the ALJ's decision. (R. 178). Up until about eight years ago, she had a solid work history, most recently in administrative support for a

locomotive company. (R. 214-215). The medical record in this case is over 500 pages long. But as the plaintiff deems only about 20 of those pages relevant [Dkt. # 19, at 9, 15], and the Commissioner doesn't refer to a singe piece of medical evidence to support her position, a brief overview will suffice. Ms. Farley began having trouble with her back in 2009 (R. 39) and, as a result, underwent surgical fusion of her spine from L4 through S1. (R. 395). After surgery, she underwent a fourteen-month course of physical therapy, but gained no improvement in her back range of motion, and still had pain during movement. (R. 327-380). She has had injections multiple times in an effort to gain relief from her pain in her lower back above her fusion and in her sacroiliac joint. (R. 400, 405, 437, 452, 455, 458, 461, 464, 466, 469, 474, 581, 583). She has had a "bilateral lumbar radiofrequency ablation. She also takes oxycodone and hydrocodone, and uses lidocaine and declefenac-epilamine patches. (R. 404, 488). She has sought treatment for migraines and right shoulder pain, as well as depression and anxiety. (R. 403, 404, 626, 780).

After an administrative hearing – at which Ms. Farley, represented by counsel, and a medical expert and a vocational expert testified – the ALJ determined she was not disabled. The ALJ found that Ms. Farley had two severe impairments: degenerative disc disease and status post spinal fusion. (R. 19). The ALJ found that her mood disorder caused her no more than a mild limitation in the area of maintaining concentration, persistence, and pace, and so was a non-severe impairment. (R. 19-20). None of Ms. Farley's impairments, singly or in combination, amounted to a condition that met or equaled an impairment assumed to be disabling in the Commissioner's listings. (R. 20-21).

The ALJ then determined that Ms. Farley could perform sedentary work as defined in the Commissioner's regulations. (R. 21). That means work that:

involves lifting no more than 10 pounds at a time and occasionally lifting or carrying

2

> articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567. In addition, the ALJ found that Ms. Farley could occasionally climb ramps and stairs but could never climb ladders, ropes or scaffolds. She could occasionally balance, stoop, kneel, crouch, or crawl. She could occasionally be exposed to vibrations, moving machinery, or unprotected heights. And, the ALJ determined that "[d]ue to pain, she [was limited to performing] simple routine tasks requiring no more than short, simple instructions and simple work related decision-making with few workplace changes." (R. 21). The ALJ essentially based this residual functional capacity finding on the testimony of the medical expert, who felt Ms. Farley could perform sedentary work with "occasional functional activities." (R. 24, 46). She rejected the opinion of Ms. Farley's treating physician, saying it was based on Ms. Farley's subjective complaints and not on any medical findings. (R. 25).

The ALJ also rejected Ms. Farley's allegations regarding her symptoms and limitations. She said they were "not entirely consistent with the medical record and the other evidence in the record . . . ." (R. 23). Relying on the testimony of the vocational expert from the administrative hearing, the ALJ determined that, while Ms. Farley could no longer perform her past work, but could nevertheless perform other work that exists in significant numbers in the national economy: packer (Dictionary of Occupational Titles (DOT) 737.587-010), assembler (DOT 739.687-066), and inspector (DOT 669.687-014). (R. 27). As a result, the ALJ concluded that Ms. Farley was not disabled and not entitled to DIB. (R. 27).

3

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the Commissioner's resolution of that conflict. *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997); *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017)

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not

4

build an accurate and logical bridge between the evidence and the result.").

### III.

Social Security disability appeals nearly always involve the subjective versus the objective. A plaintiff claims he or she can no longer work due to pain, and they queue up for benefits with their medical records – usually, as here, voluminous medical records. The ALJ has to decide whether to believe the plaintiff is in too much pain to work. That is often a challenge, as the Seventh Circuit has explained:

> The etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be "read off" from a medical report. Pain is a complex, multidimensional, subjective experience. The report of pain is related to numerous variables, such as cultural background, past experience, the meaning of the situation, personality variables, attention, arousal level, emotions, and reinforcement contingencies. There is often a poor relationship between the 'subjective' experience of pain and 'objective' or external referents. This may be most evident in the case of chronic pain where apparently similar peripheral pathology, injury, or nociceptive input [pain stimulus] can result in markedly different presentations. Whereas patient self-report, using verbal analogue or other rating scales, is perhaps the most straightforward and appropriate means of determining pain severity (or other aspects of the pain experience), this is prone to response bias like all self-reports.

*Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006).[1]

---

[1] *See also Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)(". . . the etiology of extreme pain often is unknown, and so one can't infer from the inability of a person's doctors to determine what is causing her pain that she is faking it."); *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004)("Medical science confirms that pain can be severe and disabling even in the absence of 'objective' medical findings, that is, test results that demonstrate a physical condition that normally causes pain of the severity claimed by the applicant. And so 'once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence . . . But of course this dispensation invites the unscrupulous applicant to exaggerate his or her pain without fear of being contradicted by medical evidence. The administrative law judge must be alert to this possibility and evaluate the applicant's credibility with great care. His responsibility is all the greater because determinations of credibility are fraught with uncertainty . . . ." (citations and quotations omitted)).

In this case, the ALJ's assessment of Ms. Farley's allegations regarding her pain falls short of what the applicable case law requires. The ALJ got off to a bad start in discussing Ms. Farley's allegations by employing a paragraph of boilerplate. The ALJ said that "the claimant's statement concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 23-24). This appears to be the current version of the boilerplate that has concerned reviewing courts for a number of years, with previous versions coming under fire repeatedly, generally to no avail. *See, e.g., Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016)(deriding "the ALJ's use of language that this court routinely has condemned as 'meaningless boilerplate' and 'backwards' analysis."); *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)("The present 'template,' . . . is even worse . . . ."); *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011)("There is no explanation of which of [claimant's] statements are not entirely credible or how credible or noncredible any of them are."); *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010)("It is not only boilerplate; it is meaningless boilerplate."). The problem with this current version is that it doesn't match what the Commissioner's regulations say the standard for evaluating allegations about symptoms is: that the ALJ must determine whether those allegations "can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §416.929(a). The standard that the ALJ said she was applying here – that the allegations have to be "entirely consistent" with the evidence – is more rigorous.

The ALJ then said that Ms. Farley's allegations were not supported by the medical records, but did not mention any "other evidence" that failed to support them. It is well-settled that an ALJ cannot discount a plaintiff's allegations based on the medical evidence alone. *See Vanprooyen v.*

6

*Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017); *Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016). "Pain can be severe to the point of being disabling even though no physical cause can be identified . . . ." *Pierce v. Colvin,* 739 F.3d 1046, 1049–50 (7th Cir.2014). So, there has to be more than the objective medical evidence to support the ALJ's assessment of Ms. Farley's allegations regarding her symptoms and limitations, or this case must be remanded.

The Commissioner points out that the ALJ mentioned Ms. Farley's resort to medication, injections, and physical therapy to quell her pain. [Dkt. #22, at 8]. But mentioning them – or "recognizing" them, as the Commissioner puts it – doesn't let the reviewing court know what the ALJ thought about them and how they played into the ALJ rejecting Ms. Farley's allegations. *See Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016)(ALJ must "engage sufficiently with the evidence" to allow the reviewing court to follow her reasoning); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir.2011)(the ALJ must "explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record."). Ms. Farley underwent a lumbar fusion surgery in 2010. Then she completed a regimen of physical therapy. But her pain returned and she underwent a series of injections over the course of the ensuing three years (R. 403, 405, 437, 452, 455, 458, 461, 464, 466, 469, 474, 581, 583), not to mention a medial branch block and a lumbar radiofrequency ablation. (R. 400, 434). All along, she has been prescribed and has been taking strong, narcotic painkillers like Norco and Oxycontin. (R. 482, 490). As the Seventh Circuit has pointed out repeatedly, this kind of a quest to alleviate pain makes it more likely that a claimant's allegations are credible. *Israel v. Colvin*, 840 F.3d 432, 441 (7th Cir. 2016); *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014); *Carradine v. Barnhart*, 360 F.3d 751, 755

(7th Cir. 2004).

Rather than acknowledge that connection, the ALJ focused on the few reports immediately after injections where Ms. Farley said her pain was reduced. (R. 23, 24). So, the ALJ noted that Ms. Farley reported improvement after injections, citing reports from May 18, 2011; May 30, 2013; March 7, 2013; November 16, 2013; and December 18, 2013. (R. 440, 443, 455, 461, 474). But even those few reports show that relief was sporadic; Ms. Farley continued to have flareups and bad days along with the good. More importantly, even the few reports the ALJ mentioned show that relief was temporary at best. For example, while the report from November 16, 2013 states that the October 7th injection provided some relief, Ms. Farley was back for another injection a week and a half later, on November 25th. (R. 439-40, 442-43). Indeed, Ms. Farley also had to get injections to relieve her pain on February 24, 2011; March 10, 2011; March 24, 2011; August 22, 2011, November 17, 2011; February 23, 2012; July 9, 2012; April 15, 2013; December 30, 2013; and February 10, 2014. (R. (R. 403, 405, 437, 452, 455, 458, 461, 464, 466, 469, 474, 581, 583). So, the record tends to show, not the successful course of treatment the ALJ's opinion depicts, but unrelenting pain that returns time and again no matter what. The ALJ improperly fixated on a few positive reports that supported her finding without addressing the negative aspects of those reports and others. *See Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018); *O'Connor–Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016); *Campbell v. Astrue*, 627 F.3d 299, 301 (7th Cir. 2010).

The Commissioner also points out that the ALJ noted Ms. Farley's daily activities, which were very limited. [Dkt. #22, at 8]. But, as with Ms. Farley's treatment, the ALJ simply mentioned them without discussion. All the ALJ said was:

In a disability report, [Ms. Farley] reported she had difficulty bathing, dressing,

8

caring for her hair, shaving, feeding herself, using the toilet, and cooking. In a function report, she said she was unable to do most chores around the house.

(R. 24). The ALJ then went on to indicate that she didn't believe Ms. Farley because injections had provided relief and she hadn't had additional surgery. (R. 24). There's no logical bridge there. As already discussed, the record shows injections provided only temporary relief at best. And neither the ALJ nor the Commissioner have pointed out any evidence that additional surgery would help. *See Hill v. Colvin*, 807 F.3d 862, 868 (7th Cir. 2015)(requiring ALJ to inquire into reasons for failing to undergo a certain course of treatment); *Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014)(cautioning about drawing inferences from failure to seek certain treatments); *Thomas v. Colvin*, 534 F. App'x 546, 551–52 (7th Cir. 2013)("We fail to understand why [plaintiff's] treatment . . . — continuous efforts to treat her pain with medication before undergoing a laminectomy — undermines her allegations of crippling back pain."); *cf. Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015)("[Plaintiff]turned down other treatment options as well—still another reason to think she may have been exaggerating her symptoms.").

So, this case must be remanded to the Commissioner for another go-round, but it is worthwhile to address Ms. Farley's concerns about the manner in which the ALJ handled the opinion from her treating physician, Dr. Ghani. Dr. Ghani filled out a form from Ms. Farley's attorney on August 18, 2015. (R. 772-779). Dr. Ghani reported that Ms. Farley could sit for a total of just two hours in an eight-hour workday, and stand for one hour. Even then, she had to alternate between standing and sitting. As for the remaining five hours of the day, one must assume she had to lie down. (R. 772). The doctor added that Ms. Farley suffered from such a level of fatigue that she could not even work at a sedentary job. (R. 774). As the basis for this opinion, Dr. Ghani attached

9

a list of diagnoses: "degenerative disc, lumbar introvert, nerve damage, osteoarthritis, spondylosis, bulging disc, herniated disc, scoliosis, bone spurs, sacroilitis, facet syndrome w/o myelop lumbar, myofascial pain syndrome, ankylosing spondylitis, sciatica or lumbar radiculopathy, migraines, depression, anxiety, PTSD, nerve pain from cervical, fatigue from chronic pain per above, medications, sleeping issues." (R. 780). He said she suffered pain due to lumbar radiculopathy that also was of a degree that prevented her from working even a sedentary job (R. 775), and that this resulted in a moderate restriction on her ability to maintain concentration. (R. 776). In essence, Dr. Ghani rendered a portrait of Ms. Farley as what ALJs used to call a "dead claimant." *See Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *West v. Colvin*, No. 10 C 5761, 2013 WL 3728807, at *14 (N.D. Ill. July 16, 2013). The ALJ didn't buy it and, for a couple of reasons, gave the opinion no weight.

First, the ALJ said she rejected Dr. Ghani's opinion because it was based on Ms. Farley's subjective complaints and appeared to be "sympathetic." A treating doctor's opinion may be properly discounted if it is based upon the claimant's subjective complaints rather than objective medical evidence. *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016); *Alvarado v. Colvin*, 836 F.3d 744, 748 (7th Cir. 2016); *Ketelboeter v. Astrue,* 550 F.3d 620, 625 (7th Cir. 2008); *White v. Barnhart,* 415 F.3d 654, 659 (7th Cir. 2005). And, it is not uncommon for a treating physician to be sympathetic to a patient's quest for disability benefits, as the ALJ suggests. *See Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)("As we previously have noted, the patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability.").

The Seventh Circuit explained the dichotomy that can accompany a physician's familiarity with a patient this way:

> The advantage that a treating physician has over other physicians whose reports might figure in a disability case is that he has spent more time with the claimant. The other physicians whose reports or other evidence are presented to the administrative law judge might never even have examined the claimant (that was true here), but instead have based their evidence solely on a review of hospital or other medical records. But the fact that the claimant is the treating physician's patient also detracts from the weight of that physician's testimony, since, this did not follow along as is well known, many physicians (including those most likely to attract patients who are thinking of seeking disability benefits, . . .) will often bend over backwards to assist a patient in obtaining benefits."

*Hofslien v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006).

The other reason the ALJ gave for discounting Dr. Ghani's opinion – that it was unsupported by medical findings and inconsistent with other medical evidence – was appropriate as well. As already noted, all Dr. Ghani supported his form with was a list of diagnoses. Diagnoses are not necessarily disabilities. As such, it is "reasonab[e]" for an ALJ to "demand[] from [a treating physician] some explanation for finding limitations so . . . severe . . . ." *McFadden v. Berryhill*, No. – Fed. App'x –, –, 2018 WL 317282, at *3 (7th Cir. Jan. 8, 2018); *see also* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion ... the more weight we will give that opinion."). For example, when Dr. Ghani states that Ms. Farley has a herniated disc, where in the record is evidence to support that? There is no mention of a study revealing a herniated disc in either Ms. Farley's brief or the parties' combined statement of facts.

Significantly, Ms. Farley cannot even direct the court to any treatment notes from Dr. Ghani. She cites to none in her brief [Dkt. # 19, at 9], and the only mention of Dr. Ghani seeing Ms. Farley in the parties' joint statement of facts is when he performed injections on April 6 and May 15, 2015.

11

[Dkt. #21, ¶ 13]. Even this is questionable, as the reports indicate that Dr. Goodman performed the procedures. (R. 816, 819).[2] For all we know from Ms. Farley's brief, Dr. Ghani never examined her. Along these lines, when Ms. Farley complains that the ALJ did not evaluate the length of time Dr. Ghani treated Ms. Farley, she cannot even say in her brief how long that was. [Dkt. #18, at 9].

Ms. Farley suggests that, because Dr. Ghani treated her in conjunction withy Dr. Goodman, Dr. Goodman's clinical notes should have satisfied the ALJ as support for Dr. Ghani's opinion. But, again, Ms. Farley directs the court to no clinical or laboratory findings; no x-rays, MRIs, examination reports, etc. She cites only to the reports of injection procedures. [Dkt. # 19, at 9].

All this is not to say that Dr. Ghani's assessment of Ms. Farley's capabilities was wrong. But, in the end, the ALJ provided two valid reasons for rejecting the doctor's opinion; that is sufficient. *See Alvarado v. Colvin*, 836 F.3d 744, 749 (7th Cir. 2016)(ALJ's two permissible reasons for not assigning controlling weight to physician's opinion were enough); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)(ALJ need only "minimally articulate" reasons for rejecting evidence). While Ms. Farley takes issue with the ALJ's rejection of the opinion, she is unable to provide anything beyond the unsupported assertions that the ALJ was wrong. If she thought that there are clinical and laboratory findings from Dr. Ghani lurking somewhere in the 800-page administrative record, it was incumbent upon her to point them out. It is, after all, "[a]n advocate's job is to make it easy for the court to rule in his client's favor . . . ." *Dal Pozzo v. Basic Mach. Co.*, 463 F.3d 609, 613 (7th Cir. 2006). As the Court of Appeals has emphasized, *Spitz v. Proven Winners N. Am., LLC*,

---

[2] Each report clearly indicates the date of the "surgery" and that the surgeon was Dr. Goodman. For whatever reason, the Commissioner stipulated to the fact that Dr. Ghani performed the procedures in the parties' combined statement of facts. The parties should take care in the future as cases can sometimes turn on such things. In any event, the stipulation here seems improvident.

759 F.3d 724, 731 (7th Cir. 2014), "'[a] brief must make all arguments accessible to the judges, rather than ask them to play archaeologist with the record.'".

## CONCLUSION

For the foregoing reasons, the ALJ's decision is remanded to the Commissioner for further proceedings.[3]

ENTERED:

UNITED STATES MAGISTRATE JUDGE

**DATE:** 5/30/18

---

[3] Plaintiff asks that the ALJ's decision be reversed and an award of benefits ordered. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011). As the remand here comes under the Seventh Circuit's "logical bridge" requirement, an award of benefits is not appropriate without further administrative proceedings.